INGALLS, Appellee,

v.

INGALLS, Appellant.

[Cite as *Ingalls v. Ingalls* (1993), 88 Ohio App.3d 570.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62781.

Decided July 12, 1993.

572

---

*Ford L. Noble,* for appellee.

*Zashin, Rich & Sutula Co., L.P.A.,* and *Lawrence J. Rich,* for appellant.

PATTON, Judge.

Defendant-appellant Anna Ingalls appeals from the judgment of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, which granted the parties a divorce. For the following reasons, we affirm.

Plaintiff-appellee Michael Ingalls and defendant-appellant Anna Ingalls were married on October 14, 1972, in Cleveland, Ohio. Three children, Victoria, d.o.b. May 8, 1977, Amanda, d.o.b. October 13, 1978, and Alexander, d.o.b. June 23, 1985, were born as issue of the marriage.

The record reveals that the appellee was a Major in the United States Air Force who has been stationed in Wiesbaden, Germany, since 1980. During 1989, the appellee earned a salary of $62,909.64. Appellant and her children accompanied the appellee to Germany in 1980. While residing in Germany, the appellant worked outside the home as an elementary school teacher employed by the United States Department of Defense. As compensation, she received an annual salary of approximately $31,145 plus an additional $15,000 housing allowance.

On November 22, 1989, appellee filed a complaint for divorce. On December 14, 1989, appellant filed an answer and counterclaim for divorce. A trial was held on November 20, 1990. Following a one-day trial, the trial court issued a memorandum opinion on December 14, 1990. The parties were directed to prepare judgment entries consistent with the court's opinion. On December 20, 1990, the appellant filed a request for findings of fact and conclusions of law. In response, the trial court issued a supplemental memorandum opinion dated December 26, 1990, which was received for filing on January 2, 1991. The judge who presided over the parties' trial retired on December 31, 1990.

On March 29, 1991, appellant filed objections to a proposed judgment entry prepared by the appellee. On April 3, 1991, a successor judge signed the proposed judgment entry making the judgment a final decree.

On April 14, 1991, appellant filed a motion for new trial, which was heard by a referee. The referee recommended that the motion for new trial be overruled, and the referee's recommendation was adopted by the trial court on October 24, 1991. The instant appeal followed.

Appellant's first and second assignments of error are related and will be discussed together. They provide:

"I. The trial court erred when [a] judge other than the trial judge signed the judgment entry.

"II. The trial court erred by failing to assign this case by journal entry to the new judge."

■ Appellant contends that the successor judge, Judge James P. Celebrezze, lacked authority to sign the final judgment entry since he did not preside over the parties' trial. The record reflects that Judge Patrick Gallagher presided over the parties' November 20, 1990 trial. Following trial, on December 14, 1990, Judge Gallagher issued a memorandum opinion and directed the parties to prepare judgment entries consistent with his opinion. On December 20, 1990, appellant filed a request for findings of fact and conclusions of law. In response, Judge Gallagher issued a supplemental memorandum opinion dated December 26, 1990, which was journalized on January 2, 1991. Judge Gallagher retired on December 31, 1990 and was succeeded by Judge James P. Celebrezze. Upon his retirement, Judge Gallagher's docket passed to his successor, Judge Celebrezze. On March 15, 1991, appellant sent Judge Celebrezze a letter which provided, in part, that Judge Celebrezze lacked authority to sign the final judgment entry.

The substitution of judges after the verdict or findings have been rendered is governed by Civ.R. 63(B), which provides:

"After Verdict or Findings. If for any reason the judge before whom an action has been tried is unable to perform the duties to be performed by the court after a verdict is returned or findings of fact and conclusions of law are filed, another judge designated by the administrative judge, or in the case of a single-judge division by the chief justice of the supreme court, may perform those duties; but if such other judge is satisfied that he cannot perform those duties, he may in his discretion grant a new trial." See *Wesney v. Bellan* (Nov. 12, 1992), Franklin App. No. 92AP–203, unreported, 1992 WL 333051.

■ Furthermore, Civ.R. 63(B) recognizes that once a verdict or decision has been rendered in a case, the journalization of the court's judgment should be in accordance with such verdict or decision in the absence of some basis for contrary action. *Oakwood Mgt. Co. v. Young* (Oct. 27, 1992), Franklin App. No. 92AP–207, unreported, 1992 WL 324338. Reducing the verdict or decision to judgment may properly be performed by a successor judge. *Id.*

In the instant case, Judge Gallagher's December 14, 1990 memorandum opinion adequately set forth his decision on the merits of the parties' divorce action. Further, Judge Gallagher's December 26, 1990 supplemental memorandum opinion responded to appellant's request for findings of fact and conclusions of law. We further note it is uncontroverted that Judge Celebrezze succeeded Judge Gallagher and, as a result, inherited his docket. Under these circumstances, we find that Judge Celebrezze properly performed the ministerial act of signing the final decree which was properly drafted in accordance with the memorandum opinion and supplemental memorandum opinion issued by Judge Gallagher prior to the expiration of his office in compliance with Civ.R. 63(B).

Accordingly, appellant's first and second assignments of error are overruled.

Appellant's third assignment of error provides:

"The trial court abused its discretion by failing to follow the Child Support Guidelines pursuant to Rule 75 of the Ohio Rules of Superintendence for Courts of Common Pleas."

■ Appellant argues that the trial court erred in its calculation of child support. Specifically, appellant contends that application of the Child Support Guidelines should result in an award of $1,108 per month as opposed to the trial court's award of $1,035 per month.

R.C. 3113.215 is a codification of the Ohio Supreme Court's Child Support Guidelines. R.C. 3113.215(B)(1) creates a rebuttable presumption that the amount of child support calculated under the guidelines is the correct amount. *Rutti v. Beal* (July 30, 1992), Cuyahoga App. No. 60889, unreported, 1992 WL 181707.

Recently, the Ohio Supreme Court set forth the obligations R.C. 3113.215 imposes upon a trial court. Specifically, the court held:

"1. A child support computation worksheet, required to be used by a trial court in calculating the amount of an obligor's child support obligation in accordance with R.C. 3113.215, must actually be completed and made a part of the trial court's record.

" * * *

"3. Any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination." *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, at paragraphs one and three of the syllabus.

In the instant case, no child support worksheets were included in the record. Further, there are no findings of fact which support a deviation. We thus have no way of reviewing the lower court's calculation of child support. Accordingly, we must reverse the award and remand the matter to the lower court for a completion of the worksheet, which should have been included in the record. See *Pournaras v. Pournaras* (Apr. 8, 1993), Cuyahoga App. No. 62285, unreported, 1993 WL 106973.

Thus, appellant's third assignment of error is sustained.

Appellant's fourth assignment of error provides:

"The trial court erred by failing to divide all of the parties [*sic*] marital property and debts."

Appellant asserts that the trial court failed to divide all of the marital property and marital debts. Specifically, appellant contends the trial court failed to designate the owner of appellee's life insurance policy. Appellant also contends that the trial court failed to allocate the parties' Ohio income tax debt.

The judgment entry granting the parties a divorce provides for the following disposition of appellee's life insurance policy. Specifically, Paragraph IX(D) states:

"(D) LIFE INSURANCE ON PLAINTIFF:

"Defendant/Husband shall cause the Defendant [/W]ife to be named the beneficiary of a certain policy of insurance on his life issued by the Connecticut General Life Insurance Company in the face amount of Forty Thousand Dollars ($40,000.00), (policy number 3560960) until the youngest child of the parties shall become emancipated."

Thus, appellant's contention that the trial court failed to designate the owner of appellee's life insurance policy lacks merit. Paragraph IX(D) of the divorce decree provides for the disposition of appellee's life insurance policy.

Furthermore, Paragraph IV(B) of the judgment entry provides for the following allocation of the parties income tax obligations:

"(B) OBLIGATION FOR INCOME TAX:

"Each party shall be responsible for and be required to pay any and all Federal, State or Municipal Income Tax levied against their separate incomes, both past, present and future."

Thus, appellant's contention that the trial court failed to allocate the parties' income tax debt also lacks merit. Paragraph IV(B) allocates the parties' individual income tax obligations.

Accordingly, appellant's fourth assignment of error is overruled.

Appellant's fifth assignment of error provides:

"The trial court erred by failing to rule on defendant-appellant's temporary motion for support pendente lite."

Appellant argues that the trial court failed to dispose of all the issues by failing to rule on her motion for support *pendente lite* in his December 14, 1990 memorandum opinion. Appellant correctly points out that the court heard the appellant's motion during trial. However, contrary to appellant's assertions, the record reveals that the court denied appellant's motion for support *pendente lite.*

Paragraph 14 of the court's December 14, 1990 memorandum opinion provides, "No supportive alimony is awarded." In light of the fact that the appellant's motion for support *pendente lite* was heard at the time of trial, we find that it is

reasonable to construe Paragraph 14 as a denial of temporary support and thus a denial of appellant's motion for support *pendente lite*. Moreover, we note that the appellee was voluntarily paying the appellant the sum of $760 per month for the support of the parties' minor children during the pendency of the divorce proceedings.

Consistent with the foregoing, we find that the trial court denied appellant's motion for support *pendente lite* in Paragraph 14 of its memorandum opinion. Accordingly, appellant's fifth assignment of error is overruled.

Appellant's sixth assignment of error provides:

"The trial court erred by failing to award the defendant-appellant spousal support pursuant to O.R.C. Section 3105.18(B)."

■ Appellant argues that the trial court abused its discretion by failing to award sustenance alimony pursuant to R.C. 3105.18. Appellant's argument lacks merit.

The Ohio Supreme Court addressed the issue of sustenance alimony in *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 554 N.E.2d 83. Therein, the court stated:

"Courts in this state derive their power to award sustenance alimony from the statutes. R.C. 3105.18(A) and (B) provide a trial court with guidelines for determining whether alimony is necessary and the nature, amount and manner of alimony payments. *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 414 [75 O.O.2d 474, 482, 350 N.E.2d 413, 423]. The trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case, but such discretion is not unlimited. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 355 [20 O.O.3d 318, 322, 421 N.E.2d 1293, 1299]. A reviewing court cannot substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. *Holcomb* [*v. Holcomb* (1989) ], *supra* [44 Ohio St.3d 128] at 131 [541 N.E.2d 597 at 599]. As we noted in *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219 [5 OBR 481, 482, 450 N.E.2d 1140, 1142], for an abuse of discretion to exist, the court's attitude must be unreasonable, arbitrary or unconscionable and not merely an error of law or judgment." *Id.*, 51 Ohio St.3d at 67, 554 N.E.2d at 86.

In its December 26, 1990 supplemental memorandum opinion, the trial court set forth the following justification for its denial of sustenance alimony:

"In the decision not to award spousal support to the Defendant [appellant] and the attorney fees (See *Swanson v. Swanson* [ (1976), 48 Ohio App.2d 85, 2 O.O.3d 65, 355 N.E.2d 894] ), the Court was mindful of the funds withdrawn by the Defendant/Wife and transferred into the names of her parents. In addition, the Court was aware of the Defendant/Wife's full-time employment.

"The Court in reaching its decision applied the elements contained in Ohio Revised Code 3105.18(B), the property guidelines set forth by this Court, and case law authority *Cherry v. Cherry* (1981), [66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293] and its proge[ny]."

The record reflects that the appellant was earning a salary of approximately $47,000 as a teacher employed by the Department of Defense prior to the parties' separation. The record further reflects that the appellee was earning $62,909.64 as a Major in the United States Air Force. Additionally, at trial, it was revealed that during the parties' separation, the appellant withdrew $14,400 from the parties' credit union account and transferred said amount to an account belonging to appellant's parents. Furthermore, the court's supplemental memorandum opinion specifically states that it applied the relevant factors contained in R.C. 3105.18(B).

Under these facts and upon consideration of all the other evidence adduced below, we find that the trial court's decision not to award sustenance alimony did not constitute an abuse of discretion. *Kunkle, supra.* The court's decision was not unreasonable, arbitrary or unconscionable. Accordingly, appellant's sixth assignment of error is overruled.

Appellant's seventh assignment of error provides:

"The trial court erred by failing to permit two of defendant-appellant's witnesses to testify."

Appellant argues that the trial court erred by excluding the testimony of Roberta Settles and David Smith. For the following reasons, appellant's argument lacks merit.

A trial court has broad discretion in the admission or exclusion of evidence, and a reviewing court will not reverse a trial court's evidentiary rulings absent a showing of an abuse of discretion. *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008. Moreover, a reviewing court shall disregard any error by the trial court absent a showing of substantial prejudice to the complaining party. *Yacobucci v. Sazima* (Dec. 14, 1989), Cuyahoga App. No. 55892, unreported, 1989 WL 151315.

Roberta Settles was a personnel supervisor for the Cleveland public school system. A proffer of her testimony revealed that had she been permitted to testify, she would have described the hiring process of teachers. She also would have testified about the starting salaries for teachers in the Midwest with a background similar to appellant's.

We are unable to conclude that the appellant was prejudiced by the exclusion of Settles' testimony. The record reflects that during appellant's direct examina-

tion, she testified concerning the prospects of obtaining employment as a teacher in Cleveland and Toledo. She further testified that her investigation of potential teaching opportunities during the summer of 1990 revealed that she could expect a starting salary of $28,000–$30,000. In light of the cumulative nature of appellant's testimony and the testimony that Roberta Settles would have provided, we are unable to conclude that the appellant was prejudiced. We thus disregard any error in the exclusion of her testimony. *Yacobucci, supra.*

■ Similarly, we are not persuaded that the appellant was prejudiced by the exclusion of David Smith's testimony. Smith was the immediate superior of appellee in Germany. A proffer of his testimony reveals that he would have testified that the appellee was seeing another woman.

A review of the record reveals that appellant testified on direct examination that appellee told her that he was seeing another woman. Further, on cross-examination by appellant's counsel, appellee admitted that he was seeing another woman. In light of appellant's and appellee's testimony, we are unable to conclude that the appellant was prejudiced by the exclusion of David Smith's testimony. Moreover, the trial court's memorandum opinion and judgment entry specifically found that appellant sustained her grounds of gross neglect of duty.

Accordingly, appellant's seventh assignment of error is overruled.

Appellant's eighth assignment of error provides:

"The trial court erred when it failed to order plaintiff-appellee to pay reasonable attorney's fees to defendant-appellant's counsel."

■ Appellant argues that the trial court abused its discretion by awarding an unreasonable amount of attorney fees to the appellant. Appellant argues that the trial court's award of $4,000 was inadequate where appellant's attorney documented that he was entitled to a fee of $16,581.25. Appellant's argument lacks merit.

■ The awarding of attorney fees is within the sound discretion of the trial court. *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 90, 2 O.O.3d 65, 68, 355 N.E.2d 894, 898. Upon appeal, the only questions for inquiry are whether the factual conclusions upon which the trial court based the exercise of its discretion were against the manifest weight of the evidence or whether there was an abuse of discretion. *Id.* at 90, 2 O.O.3d at 68, 355 N.E.2d at 898.

As previously indicated in our disposition of appellant's sixth assignment of error, the trial court considered the fact that appellant withdrew $14,400 from a marital account and transferred the same to her parents prior to determining a reasonable award of attorney fees. After reviewing the record and the trial court's entries, we are unable to conclude that the trial court abused its discretion

by awarding an unreasonable, arbitrary or unconscionable fee. Accordingly, the trial court's award of attorney fees is affirmed, and the appellant's eighth assignment of error is overruled.

Appellant's ninth assignment of error provides:

"The trial court erred by failing to obtain a value of the plaintiff-appellee's pension plan, and by not awarding survivor benefits to defendant-appellant."

■ Appellant argues that the trial court abused its discretion by failing to value appellee's nonvested pension plan and failing to award appellant survivor benefits. In its judgment entry, the trial court awarded the appellant "½ of the [appellee's] military retirement pay from the date of the marriage through December 31, 1990." Judgment Entry, Paragraph IV(A).

In *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 559 N.E.2d 1292, paragraph one of the syllabus, the Ohio Supreme Court held:

"When considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result."

At the time of trial, the appellee's pension was not vested, and the record shows that appellee would not become vested until early in 1992. The transcript of proceedings further shows that appellant's counsel stipulated on the record that the parties were in agreement concerning the division of appellee's military pension. Specifically, the transcript of proceedings provides in relevant part:

"THE COURT: The pension started then. You didn't get married until October. Okay, so, we got eight months or whatever it is. But it's a marital asset so each party is entitled to half according to the Ohio law anyway.

"MR. RICH [Attorney for appellant]: We have stipulated.

"THE COURT: It's not vested so it can't be divided. If he quits or whatever, there is no money there so it falls by the wayside as a result of that.

"MR. RICH: We have stipulated, in any event, she would get half of what has accrued since they have been married. Also we stipulate we would designate this as being a survivor benefit also on her behalf. We talked about that."

Upon consideration of the circumstances of the case, the status of the parties, the nature, terms and conditions of the nonvested pension plan, and the reasonableness of the result, we are unable to conclude that the trial court abused its discretion in its division of appellee's pension. Moreover, the trial court's division of the pension plan appears to conform to the division which was stipulated to and

agreed upon by the parties. The trial court's division of appellee's pension was not unreasonable, arbitrary or unconscionable. Accordingly, appellant's ninth assignment of error is overruled.

The judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with our disposition of appellant's third assignment of error.

*Judgment accordingly.*

NAHRA, P.J., and KRUPANSKY, J., concur.