JOURNAL ENTRY AND OPINION
{¶ 1} This appeal arises from the denial of a variance to appellant homeowners, Joseph and Linda Krol, to maintain two garages, one attached and one detached, on their property in Seven Hills.
 {¶ 2} The facts are that in January 2004, appellants sought permission from the city to build a second garage on their property. Approval from the city was necessary because Seven Hills Ordinance No. 963.02(a)(3) states that existing homes "can have either an unattached garage, as set forth in (a-1), or an attached garage, as set forth in (a-2), but not both an attached and unattached." Appellants home has an attached garage, therefore a variance was needed to build a second garage. Additional variances were also needed due to the size and lot placement of the requested second garage.
 {¶ 3} In their application for a hearing before the Zoning Board of Appeals (ZBA), appellants asserted that the small size of the existing garage created a hardship because the family cars did not fit and there was no room for lawn or snow removal equipment. Appellants also stated their intent was to remove the existing driveway and to turn the existing garage into living space.
 {¶ 4} Appellants' request for variance was heard at the February 4, 2004 meeting of the ZBA. As required by ordinance, the ZBA sent out notice of the hearing on appellants' request to build a second garage to 38 near or adjacent property owners. These property owners were invited to attend the meeting and *Page 4 
express any opinion they may have on this matter. Only one neighbor attended the meeting. He was concerned about the size and placement of the second garage but stated he did not have an objection as long as the second garage was not an "eyesore" to the neighborhood.
 {¶ 5} Upon questioning by ZBA Chairman, Sherry Marcuz, Mr. Krol (appellant) told the board that he would remove the old driveway as soon as he put the new one in but was uncertain about the timetable for conversion of the garage. Appellant stated: "My wife has MS so I am trying to do this as I go along. If we need it, I can make the garage a bedroom with some handicap facilities or something." There were no further questions or comments from the board or from neighbors relating to the existing garage. The board then moved passage of three variances allowing the construction of an unattached, oversized, second garage on appellants' property.
 {¶ 6} The board's passage was subject to review by City Council. On March 22, 2004, Council unanimously approved a motion to concur with the findings of the ZBA in granting the variance requests of appellants "concerning construction of a second garage that will be unattached." Appellant then built the second garage but failed to remove the existing driveway or convert the attached garage.
 {¶ 7} In January 2005, appellant was informed by letter from the building commissioner that he was in violation of the terms of the variance. The commissioner instructed him to submit plans or a permit application for the *Page 5 
conversion of the attached garage and the removal of the driveway leading to it by February 7, 2005. Appellant wrote to the commissioner and explained that his wife's health had deteriorated in the prior six months and asked whether the attached garage could be kept for her use due to her medical problems. Attached to the letter was correspondence from a doctor attesting to appellant's wife's multiple sclerosis and other medical conditions and attesting to her qualification for handicapped disability. The doctor stated that her condition was permanent and anything that would assist in her transferring from a vehicle or limit her walking to short distances would be appreciated. The commissioner responded that the property was in violation and that he did not have the authority to modify the approval of the variance. He told appellant that if he did not want to convert the attached garage to living space, he would have to apply to the ZBA for another variance.
 {¶ 8} Appellant applied for a second variance in February 2005. At the March 9, 2005 ZBA meeting, appellant explained about the changes in his wife's medical condition and asked that he be allowed to maintain the attached garage as is. Chairman Marcuz read into the record the letter from Mrs. Krol's doctor requesting consideration of her needs. Appellants' next door neighbor, Mrs. Grether, appeared with legal counsel and argued against the granting of the variance.
 {¶ 9} According to the hearing transcript, Mrs. Grether's attorney, Mr. Kubyn, stated: *Page 6 
 {¶ 10} "We are here to reaffirm our opposition to their request. When Mr. Krol originally requested his first variance, the Grether's went along with the request simply in the spirit of being good neighbors and went along with the building of the second garage. All we are simply asking is that he go forward with what he originally intended which is to convert the attached garage to living space and take up the driveway. This is upsetting to the Grethers. They would like the work to progress along with getting the original garage converted. Nothing has really happened. Even though they feel sorry for the Mr. Krols [sic] with his wife's problems, this is something they knew about when they requested the original variance. If they knew this was going to be a problem, they shouldn't have built the second garage. If you take a look at it, the 2nd garage is not that far away from the house and is really not an inconvenience. What Mr. Krol has attempted to do is to go back on his word that he originally (inaudible). We are just asking him to do what he was originally supposed to do."
 {¶ 11} When asked by Chairman Marcuz what his client's objections are to the garage remaining as is, Mr. Kubyn voiced concerns over noise and traffic, claiming there was now "double traffic and double noise."
 {¶ 12} Mrs. Grether then addressed the board directly and took issue with appellants' and their doctor's characterization of Mrs. Krol's illness. She stated, "how can Mrs. Krol go to work almost every day of the week 8-10 hours. Drives her *Page 7 
car, goes to Marc's, goes to the library, goes shopping and cannot walk 45' from her back garage to her back door. That is all it is, 45'. That is all I have to say."
 {¶ 13} The board then voted 5-0 to deny appellants' request for a variance to allow two garages on the property. At the March 28, 2005 meeting, council approved the ZBA's denial of the variance.
 {¶ 14} On April 27, 2005, appellants filed an appeal of the board's decision in the Cuyahoga County Court of Common Pleas pursuant to R.C. 2605.01. Appellants sought and were granted leave to amend their complaint to raise claims under the American with Disabilities Act, 42 U.S.C. _12132, and the Rehabilitation Act of 1973, 29 U.S.C. _794 seeking as remedy the reasonable accommodation of a variance to keep both garages. On March 22, 2006, the trial court issued a one sentence ruling on the administrative appeal, stating: "Court finds in favor of the appellees City of Seven Hills." On August 10, 2006, the trial court granted summary judgment in favor of the city on all of appellants' other claims. This appeal followed.
 {¶ 15} Appellants assign four errors for review. The first assignment asserts that the trial court erred in ruling against them on the administrative appeal. The remaining three assignments relate to appellants' subsequent disability claims and assert that the court erred in granting summary judgment against them, in denying them leave to amend the complaint for the second time, and in denying their discovery request. We find the first assignment of error to be dispositive. *Page 8 
 {¶ 16} Appellants' first assignment of error states:
 {¶ 17} "The trial court erred by dismissing Plaintiffs-Appellants appeal pursuant to R.C. 2506.01 from a final decision of the City Council of the City of Seven Hills purporting to revoke an unconditional zoning variance that it had earlier granted to Plaintiffs."
 {¶ 18} Appellants argue that the ZBA and city council's denial of the second variance amounted to an unlawful revocation of the first variance and that the trial court erred in not granting their appeal and reversing the city's order. We find this argument to have merit.
 {¶ 19} R.C. Chapter 2506 governs appeals from decisions of administrative agencies. R.C. 2506.04 provides for two levels of judicial review of agency decisions. Under the first level, the common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. See Henley v. City ofYoungstown Bd. of Zoning Appeals, 90 Ohio St.3d 142, 2000-Ohio-493.
 {¶ 20} Appellate review of the court of common pleas' decision under R.C. 2506.04 is not as broad. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of *Page 9 
law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Kisil v. Sandusky (1984),12 Ohio St.3d 30, 34 at fn. 4. The proper application of the city's charter and ordinances to the facts in the record is a question of law subject to our review. See Henley, supra, at 148.
 {¶ 21} The ZBA has only that authority granted to it by City Charter or ordinance. Section 8 of the city charter establishes a Zoning Board of Appeals and grants the board the power to grant variances, subject to approval, modification, or reversal by city council. This power to grant variances from existing zoning regulations is regulated by section 939.05(b) of the City of Seven Hills Codified Ordinances which states:
 {¶ 22} "Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this Zoning Code, the Board of Appeals shall have the power in a specific case to vary the application of any such provision in harmony with the general purpose and intent of this Zoning Code so that the public health, safety, morals and general welfare may be secured and substantial justice done."
 {¶ 23} When Mr. Krol first applied for the variance to build the second garage, he cited as his reason that the attached garage was too small to fit the cars, lawn equipment, and snow removal equipment. He stated that it was his intent to remove the existing driveway and convert the attached garage into living space depending *Page 10 
on the needs of his wife, who had multiple sclerosis. He specifically stated that he did not know when this conversion would happen because it was based upon his wife's medical condition.
 {¶ 24} The board then passed four variances for the construction of a second, oversized garage on the property. The motion approving the first variance stated: "MOTION by Mr. Wagner, seconded by Mr. Henderson, that the Board grant Mr. Joseph Krol as the owner of the property at 588 East Ridgewood Drive, a variance to Ordinance No. 963.02(a)(3) for construction of a 38' x 30' second garage to allow construction of a 38' x 30' second garage that will be unattached." The other three variances granted related to square footage and lot line distances for the second garage.
 {¶ 25} There was no mention that the variances granted were temporary or conditioned in any way upon future action to be taken by the applicant. We understand that for efficiency the board had the motions granting the variances drafted and typed up prior to the meeting and voted on those variances as drafted. However, there is nothing in the record to indicate that changes, corrections, or modifications to the motions could not be made at the meeting. If the board intended the construction of the second garage to be conditioned on the conversion of the first, it could have so stated in the variance. It did not, therefore in applying the law to the facts, we find there was no violation of city ordinance in appellants maintaining both garages on the property. *Page 11 
 {¶ 26} Appellants filed their second variance request only at the insistence of the city's building commissioner who erroneously informed appellants that they were in violation of the terms of their first variance request. Not only was there no need for such a second variance, but the language of the second variance places it outside the scope of the board's authority. The city worded the request to have the variance cover both the two garages and the two driveways. The request reads: "a variance to Ordinance No. 963.02(a)(3) to allow both an attached 2-car garage with driveway and detached 38' x 30' (3-car + storage) garage with its own separate driveway on the same property in a First Residential District." Ordinance No. 963.02(a)(3) does not regulate driveways. It only prohibits more than one garage on a residential property. There is nothing in the city's ordinances that prohibits two driveways on one residential property. As Chairman Marcuz of the ZBA stated at the hearing on March 9, 2005, "let me clarify that there is no ordinance governing the driveways. There is no ordinance that says he can't have two. The driveway is not an issue. Only the two forms of the garage."
 {¶ 27} Furthermore, the city's denial of the second variance request served to revoke the first variance granted appellants for the maintenance of two garages on their property. Section 939.05(b) of the City of Seven Hills Codified Ordinances gives the ZBA the authority to grant variances from the strict application of the zoning code, but makes no provision for ZBA authority to revoke a validly granted variance. *Page 12 
 {¶ 28} For the reasons stated above, we find that the trial court erred in granting judgment for the city on the administrative appeal. Appellants' first assignment of error has merit and is sustained.
 {¶ 29} Our resolution of appellants' first assignment of error grants appellants the relief sought and renders any analysis with respect to the remaining issues moot and, therefore, pursuant to App.R. 12(A)(1)(c) they need not be addressed.
 {¶ 30} The judgment of the trial court in the administrative appeal is reversed and final judgment is entered for appellants.
It is, therefore, ordered that said appellants recover of said appellees their costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, P.J., and KENNETH A. ROCCO, J., CONCUR *Page 1